NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF EDWARD SINCLAIR, JR., et al.<br><br>Plaintiff,<br>v.<br><br>THE COUNTY OF UNION, et al.,<br><br>Defendants. | Civ. Action No. 05-55 (KSH)<br><br><br><br>**OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

In this motion, plaintiff Edward Sinclair, Sr., proceeding *pro se*, contends that Yolanda Padilla and Nancy Martin committed fraud on the court and have thereby denied him the fruits of the settlement previously finalized in this case. Padilla and Sinclair are the parents of Edward Sinclair, Jr., who committed suicide at the age of 17 in May 2003, while he was detained at the Union County Juvenile Detention Center. Sinclair and Padilla, represented by Nancy Martin, filed suit for wrongful death and violations of Edward Jr.'s constitutional rights against numerous actors associated with the Center and with the government of Union County.

The initial complaint was filed on January 5, 2005. Relevant to the current motion are two documents dated well before that on August 5, 2003. One of the documents is a renunciation, pursuant to which Sinclair renounced not only his rights to prosecute, on behalf of his son's estate, the civil action that arose from his son's death, but also his rights to the general

administration of his son's estate.[1]  (Renunciation, attached to Tegrar Certif. as Ex. B.)  In the same document, Sinclair requested that Padilla be appointed administrator for all purposes, including prosecution of the civil case.  (Renunciation, attached to Tegrar Certif. as Ex. B.)  In the other document, Sinclair and Padilla agreed to retain Martin as their attorney.  (Retainer Agreement, attached to Tegrar Certif. as Ex. C.)  Both documents bear Sinclair's signature, and the renunciation is notarized.

The lawsuit ultimately settled, and on October 16, 2007, the Court dismissed it.  [D.E. 125.]  The settlement proceeds, totaling $561,690.64 after expenses and attorney's fees, were distributed to Padilla, as the administrator of Edward Jr.'s estate, on October 30, 2007.  (Recovery Closing Statement, attached to Tegrar Certif. as Ex. E.)

Sinclair claims that Padilla and Martin have deceived both him and the Court by conspiring to forge his signature on the renunciation and the retainer agreement.  (Reply Br. at 7.)  To that end, Sinclair proceeds on a theory that Padilla and Martin have perpetrated a fraud on the Court.  He does not set forth any other theory for relief.  He does not argue that the scope of the renunciation does not cover the settlement agreement.  Instead, he contends that he never gave verbal or written consent for either Padilla or Martin to sign his name to any documents, and adds that "any documents or statements filed or signed in my name are indeed false, fictitious fraudulant [sic], and fraud upon the court . . . ."  (Moving Br. at 6.)  In an apparent contradiction, Sinclair asserts that he agreed to let Padilla retain Martin to represent both of them, but that Martin then failed to keep either him or Padilla apprised of the progress of the

---

[1] The renunciation reads as follows: "Edward Sinclair, Sr., Father of Edward Sinclair, Jr., who died intestate, May 10, 2003, being entitled to have being entitled to have administration ad prosequendum in matter of the estate of said deceased, and also general administration of the Goods and Chattels, Rights and Credits and Effects of said deceased, do hereby renounce said rights to said administration ad prosequendum and general administration aforesaid, and request appointment of Yolanda Padilla, as Administrator Ad Prosequendum of the Estate of Edward Sinclair, Jr."

2

case. (*Id.* at 3–4.) In addition, he states that Padilla "left [him] in the dark," though he also states that he kept in contact with her. (*Id.* at 4.) He appears to seek a portion of the settlement proceeds and asks the Court to freeze Padilla and Martin's bank accounts. (*Id.* at 9.)

**Discussion**

A motion seeking relief from an order on the basis of fraud can be brought in one of two ways. First, a party can move pursuant to Fed. R. Civ. P. 60(b)(3) within one year of the order or judgment. Fed. R. Civ. P. 60(c)(1). This avenue is unavailable to Sinclair, as his motion comes more than three years after the settlement.[2] Second, a party can bring an independent action for relief from an order on the grounds that a fraud has been committed upon the court. This means is recognized by Fed. R. Civ. P. 60(d)(3), which states that "[t]his rule does not limit a court's power to . . . set aside a judgment for fraud on the court." While Sinclair has characterized his submission as a motion, it is drafted in the form of a complaint, and a court may construe a Rule 60(b) motion as an independent action alleging fraud on the court. *See Galatolo v. United States*, 394 F. App'x 670, 672 (11th Cir. 2010); *Parker v. Gosmanova*, 378 F. App'x 816, 817 (10th Cir. 2010). The elements of such an independent action are the same as the elements of a Rule 60(b)(3) motion. *Averbach v. Rival Mfg. Co.*, 809 F.2d 1016, 1022–23 (3d Cir. 1987).

Initially, the Court observes that the dispute here appears to be between Sinclair as the heir to his son's estate and Padilla as the administrator of the estate, into which the settlement proceeds flowed. As Martin argues, should Sinclair have grounds to challenge Padilla's use or distribution of the estate's assets, he cannot do so by making empty accusations of fraud, and as such, a motion before this Court is not the proper avenue for redress. The only question before

---

[2] Sinclair's invocation of Rule 60(b)(6) is similarly unavailing because a motion cannot be brought under subsection (b)(6) if it could have been brought under subsections (b)(1)–(5). *SEC v. Fin. Warfare Club, Inc.* 2011 WL 1474950, at * 2 (3d Cir. Apr. 19, 2011) (stating that movant could have sought relief under subsections (b)(2) or (b)(3) and that "the availability of relief under those subsections renders subsection (b)(6) unavailable").

the Court is whether Sinclair has established the elements of a claim for fraud on the court, and having reviewed the parties' submissions, the Court concludes that he has not. His unsupported, after-the-fact accusation and demand fall well short of establishing, by clear and convincing evidence, the elements of a claim of fraud on the court: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) that in fact deceives the court." *Herring v. United States*, 424 F.3d 384, 390 (3d Cir. 2005); *Thompson v. Eva's Vill. and Sheltering Program*, 2009 WL 3486050, at *10 (D.N.J. Oct. 28, 2009). He makes very serious allegations against Martin without providing any proof. He steadfastly maintains that he signed neither the renunciation nor the retainer while failing to address the fact that the renunciation was notarized. Sinclair does not contest the scope of the renunciation, but merely asserts that he did not sign it. The renunciation and retainer agreement were signed 17 months before the original complaint was filed, more than four years before the settlement, and more than seven years before the instant motion. For the first time they have been put before the Court. Thus, not only does Sinclair fail to demonstrate the existence of a fraud, but he also fails to show that the Court was deceived because the purportedly deceptive documents were not presented to the Court until long after this case was resolved.

      The phrase "fraud on the court" denotes conduct that "does[,] or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Virgin Islands Hous. Auth. v. David*, 823 F.2d 764, 767 (3d Cir. 1987) (alteration in original) (quoting 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 60.33, at 60-360 (2d ed. 1985)). Sinclair's

moving papers lack any proof that the court's integrity has been undermined.  The motion is denied, and an appropriate order will be entered.[3]

          August 3, 2011                                         /s/ Katharine S. Hayden
                                                                         Katharine S. Hayden, U.S.D.J.

---

[3] Sinclair also seeks relief under Fed. R. Civ. P. 59(e) and 42 U.S.C. § 1983.  However, a motion under Rule 59(e) must be brought within 28 days of the entry of the judgment to be amended, and the order dismissing the case was filed three years and three months before Sinclair filed the instant motion.  Furthermore, neither Martin nor Padilla is a state actor, and therefore no action under § 1983 can lie against them.  *West v. Atkins*, 487 U.S. 42, 49 (1988).